COOPER & COMPANY *vs.* AMERICAN CAN COMPANY.

Waldo.      Opinion February 27, 1931.

*Hinckley, Hinckley & Shesong,* for plaintiff.
*William B. Mahoney,*
*Theodore Gonya,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, THAXTER, JJ.

BARNES, J. Plaintiff, by virtue of the Workmen's Compensation statute in behalf of the dependent widow, recovered a verdict in the Superior Court, after a collision that resulted in the instant death of John M. Crosby.

The appeal is on the general motion. Mr. Crosby was, at the time of the accident, an employee of plaintiff and his work was to accompany his son, the driver of plaintiff's motor truck conveying a load of lumber from Belfast to Searsport over the main highway.

The accident occurred about nine in the morning of January 8, 1929, in a sparsely settled section, on a modern country road.

The truck was loaded with 2 x 4 lumber, piled about a foot wider than the cab on each side, and four and a half feet high, the top of the load being from six to seven feet above the surface of the road.

The accident occurred a bit more than a mile easterly from the bridge at Belfast, at a point where the road runs on a right line,

except that it swerves slightly to the right. The slope, if any, is downward toward Searsport.

The road here was of gravelled construction, about thirty-two feet wide, a twenty-foot strip in its center being surfaced with tarvia.

The day was fair and the surface of the highway free from snow or ice.

As plaintiff's truck proceeded engine trouble became apparent and the driver pulled over to his right and brought it to a stop.

It stood with its left tires on the very margin of the tarvia.

The brake did not hold the truck motionless, and, while in his seat in the cab, the driver bade Mr. Crosby get a stone to trig its wheel. When the latter failed to loosen a stone from the gravel to which it was frozen, the driver suggested that he go round the truck to the tool box under its left side and get a hammer or other tool to loosen the stone.

At this time the agent of defendant, driving its Chevrolet coupe, was coming from the rear and as he approached the truck had a clear view, unobstructed by any obstacle or vehicle, except plaintiff's stationary truck.

In acting on the suggestion of the truck driver that he get a tool, Mr. Crosby went round the front of the truck, took two steps on the tarvia and was struck and killed by defendant's automobile. Up to this point there is no dispute.

The only persons near enough to him to testify to Mr. Crosby's last steps were the two motor drivers.

Plaintiff's driver testified that he took two steps beyond the truck's left front bumper, flinched back, though his feet did not move, and was struck by the automobile that flashed by the truck. He did not state whether Mr. Crosby was moving out at right angles with the road or in the direction of the tool box, nor is he definite and certain that two steps were taken, saying that his position when struck was not more than "two or three feet by the bumper." He testified that he heard no sound of horn.

Defendant's driver testified that he was proceeding "around thirty miles an hour"; that he sounded his horn when about sixty feet behind the truck; that he was going by the truck, "within

passing distance," when the man appeared a pace or two in front of his car and was struck.

There is no evidence that Mr. Crosby was seen by defendant's driver before he stepped out by the bumper, and from testimony as to the truck, its load, and the situation as the driver approached, it is likely he was not seen until then.

Another man, driving a bus from Searsport came on the straight-away, with unobstructed view for about a quarter of a mile as he approached the truck, arriving to assist in caring for the injured man before defendant's driver had turned his car and returned. This man's testimony is not helpful, but we are satisfied that his first glimpse of Mr. Crosby was as his body rebounded after the impact.

'On the facts as we believe the jury must have found them we have the case of a pedestrian presenting himself from a position of complete obscurity, on that part of a highway which both he and defendant's driver may lawfully occupy, provided each is in the exercise of due care. Around a motor vehicle temporarily halted on its right-hand margin of a way, for inspection or minor repairing, in the daytime and on a country road, it may be thought there should be a zone of safety for its occupants, as there is about a trolley car when stopped in a city street, the so-called humanitarian doctrine, but our court has not yet attempted to delimit such a zone.

There is no evidence that defendant's driver saw the truck in motion, or any persons about it. It may be a negligent act to drive so near an apparently abandoned truck as to strike its cab door, should it be opened. We do not know how near the cars were when the automobile went by. The only testimony before us is that it went by the truck "within passing distance." Whether the clearance was inches or feet we do not know.

There can be no recovery unless there was negligence on the part of defendant's driver. But, since no willful or wantonly reckless act is claimed, there can be no recovery if Mr. Crosby stepped out by the bumper from a position of safety and obscurity, without taking the precautions that due care for his own protection demanded.

In the protection of his person or property when about to emerge from a position of security and step onto a travelled highway a pedestrian must exercise due care. The decisions are unanimous on this point.

He must do what the ordinarily intelligent and prudent person in like situation would do.

Usually when about to step from a city curb or country road margin on a highway, to cross or to traverse it, a pedestrian is not charged with the duty to look and listen. *Shaw* v. *Bolton,* 122 Me., 232, 119 A. 801.

But the case at bar is specific and is not ruled exclusively by general principles.

In this case, both parties, of right might claim to occupy the side of the highway where the accident occurred. If both present themselves to occupy the same spot at a given instant there may be peril for either. This would seem apparent to the man of ordinary intelligence. What, under like circumstances would the ordinarily prudent man do? What the latter would do, Mr. Crosby must do, or, failing in this, if injured, his injury must be suffered without lawful recovery from the person liable for the acts of one who may collide with him.

The testimony shows that, so far as defendant's driver was concerned, Mr. Crosby was unseen as he approached that driver's course walking by the front of the truck. The closely-piled lumber shut off from the driver any glimpse of the moving man, until he stepped on the tarvia of the road. Brakes were set but the unfortunate man stepped into the path of the swiftly moving car, and the result was inevitable.

It may be helpful in determining liability of the automobile driver to discuss the question of proximate cause of injury.

For, if it be assumed that defendant's driver were guilty of negligence, because operating without due care for other occupants of the highway (which we do not decide), it would be necessary under circumstances in many points resembling those here considered, to determine what was the proximate cause of the injury.

If the jury, in this case, determined the proximate cause, and failed as they decided they found it, their verdict may not stand.

It is claimed by the pleadings in this case that the proximate cause of the injury was contributory negligence on the part of Mr. Crosby.

The proximate cause of an injury must be referred to negligence when it appears that such injury was the natural and probable consequence of such negligence, and should have been foreseen by a person of ordinary intelligence and prudence, in the light of the attending circumstances.

The elements of *natural and probable result*, and that the result ought to have been foreseen by a person of ordinary intelligence and prudence *in the light of the attending circumstances*, are distinguishing characteristics when the acts of the injured one are studied.

Whether his negligence was a proximate cause of this accident depended on whether he exercised due care under the attending circumstances.

True this was a question for the jury. But if decision of this question was not made by the jury; or if its decision by them was contrary to that at which reasonable men, fully informed of the conditions under which the accident occurred, and of the legal rights of passing automobilists, and fully cognizant of the duty incumbent on the deceased to safeguard his own person as he passed from a position of safety and obscurity to the open roadway and into the path of automobiles lawfully on his side of the street, would have arrived, injustice may have been done to the owner of the automobile.

A verdict can not be allowed to stand unless based on testimony and evidence, and on reasonable inferences logically drawn from the testimony and physical facts duly proven to have existed.

"Testimony to sustain a verdict must be credible, reasonable, and consistent with probabilities and with the circumstances proven by uncontradicted testimony." *Page* v. *Moulton*, 127 Me., 80.

If the evidence would satisfy men of average intelligence and qualified for jury duty, under proper instructions from the Court, that Mr. Crosby was negligent in approaching the tarvia of the road as he did, and stepping out on it, such men must find him guilty of negligence which proximately contributed to his injury.

This precludes recovery of damages. *Lord* v. *Stacy*, 68 Cal. App., 517, 229 Pac., 874; *Cullinan* v. *Tetrault*, 123 Me., 302.

A man of extreme prudence would have passed the truck, in search for its tool box, by going round its rear. But extreme prudence is not the requirement. Such an one would have halted as his eyes caught the first glimpse of the road toward Belfast, and would then have seen the on-coming car.

In the circumstances attending Mr. Crosby as he sought the tool box, what would the ordinarily careful and ordinarily prudent man do? That was the test that the jury met. *Sturtevant* v. *Ouellette*, 126 Me., 558. They failed, either in considering all the attending circumstances or in determining what the man of ordinary prudence in Mr. Crosby's stead would have done.

Under the rule requiring every user of the highway to exercise reasonable care for his own safety and protection (42 C. J., 1133, 1135), a pedestrian crossing or about to cross a street or highway when his view of an approaching motor vehicle is obstructed, is usually required to exercise a greater degree of care than would under other circumstances be necessary, *Moss* v. *Boynton Co.*, 44 Cal. App., 474, 186 Pac., 631; and is negligent if he fails to take proper precautions to discover and observe the approach of such vehicle before placing himself in a position of danger. *Goodwin* v. *Miller*, 210 Ky., 407, 276 S. W., 117; *Winter* v. *Van Blarcom*, 258 Mo., 418, 167 S. W., 498; *Harder* v. *Matthews*, 67 Wash., 487, 121 Pac., 983.

And the question of contributory negligence must be determined without regard to any negligence on the part of defendant. Giving to plaintiff's evidence all the value to which it is legally entitled, and resolving every reasonable inference which may be drawn therefrom in favor of plaintiff, the inevitable conclusion must be that Mr. Crosby negligently left his place of safety in the obscurity of the loaded truck and stepped directly into the path of the moving automobile.

As said in *Moss* v. *Boynton*, supra, "This was particularly true if his (plaintiff's) view was to any extent obstructed by the jitney bus."

Under circumstances closely like those set up in the evidence in

this case many courts have found the injured person guilty of negligence. And we quote their expression of the law applicable here.

"If a person walks into a danger that the observance of due care would have enabled him to avoid, and is thereby injured, he would be guilty of contributory negligence. A pure accident, without negligence on the part of the defendant is not actionable." *Simeone* v. *Lindsay*, 22 Del., 224, 65 Atl., 778.

"A six year old boy was riding in the end of a wagon . . . at a point near his school building he suddenly jumped off the wagon and started east . . . direction of wagon and defendant's auto was toward the south. The boy was struck by the fender . . . the time allowed the driver to set the brakes and stop the automobile after the boy had climbed to the pavement was very brief, and distance from the rear end of the wagon to the point of collision could not have exceeded a few feet. Judgment for plaintiff reversed." *Klink* v. *Bany* (Iowa), 224 N. W., 540; *Brekke* v. *Rothermal*, 196 Iowa, 1288, 196 N. W., 84; *Gavin, Adm'r* v. *Jacobs*, 259 Mass., 23; *West* v. *City of Medford*, 255 Mass., 266, 151 N. E., 295. Appellant stepped immediately in front of defendant's automobile from between two parked automobiles. Judgment for defendant affirmed. *Goodwin* v. *Miller* (Ky.), 276 S. W., 117; *Collier* v. *Varino & Co.*, 153 La., 636, 96 So., 500.

Where the driver of a motor truck turned to his left to pass a cracker wagon at the right curb and after passing same and swinging again to his right, without blowing horn came in collision with an 8⅓ years old boy, who had left the sidewalk near the horse's head and had walked or run into the street five or six steps to fatal collision with the truck, *held*:

"In these circumstances no one else could reasonably forsee the sudden presence of the plaintiff's intestate in the path of the automobile, or prevent a collision with him. The direction of the verdict for the defendant was clearly right." *Lovett, Adm'r* v. *Scott*, 232 Mass., 541, 122 N. E., 646.

Where plaintiff, after alighting from a street car went to the rear of the car, started to cross the adjoining track and was struck by an automobile, and testified the automobile was pretty close to

the street car . . . that he had just taken one step : . . before he was hit; that before he got out free and clear there wasn't any chance to see anything coming in the tracks; that he could have seen a little, not much more than halfway down the side of the street car; that he looked; that he saw the automobile when he first looked and it was then not more than three feet away from him, *held*: "On the evidence most favorable to the plaintiff the rational inference to be drawn is that his own lack of reasonable care contributed to his injury and that a verdict was rightly directed for the defendant on that ground." *Gibb* v. *Hardwick*, 241 Mass., 546, 135 N. E., 868.

"There is nothing in the evidence to support a finding that any negligence of the defendant had causal relation to the plaintiff's injury. The mere happening of the accident was not evidence to that end. The plaintiff must have come into the pathway of the defendant's automobile by first passing through a procession of automobiles moving on the same street in the opposite direction. There is nothing to indicate that he could have been seen by the defendant for more than an instant, if at all before the injury." Directed verdict for defendant sustained. *Rizzittelli* v. *Vestine*, 246 Mass., 391, 141 N. E., 110; *Goetze* v. *Dominick*, 246 Mass., 310, 140 N. E., 802.

Plaintiff's "testimony was that he alighted from the automobile into the pathway of the trolley car, without looking to see if any car was coming; that he did not hear or see the car or know anything about it until it struck him.

"It is manifest that the slightest attention to his own safety would have prevented his injury. While he might depend to a reasonable extent on the expectation that the motorman would not be negligent, he was not justified in abandoning all precautions for self protection. The plaintiff was in a place of entire safety within the automobile. He voluntarily and without exigency moved into a danger zone by getting in front of an on-coming trolley car, which must have been in plain sight and very near when he opened the door of the automobile and got out." Judgment was for the defendant. *Will* v. *Boston Elevated Ry. Co.*, 247 Mass., 250, 142 N. E., 44.

Where·a man sixty years old, of good health, hearing and eye-sight, while crossing a city street was hit by a motor truck and killed, the court say: "There was no evidence of the defendant's negligence. The intestate was not seen by anyone until the instant he was struck. Where he came from, what he was doing, whether walking or running, in what direction he was moving, is entirely a matter of conjecture; there is nothing to show how the accident happened. The burden of proof to show the defendant's negligence was upon the plaintiff, and such negligence can not be inferred, in a case like this, merely from the happening of the accident. The fact that when the witness saw the truck it was going 'fast' is too indefinite, without anything to indicate the rate of speed, to war-rant a finding of negligence. There was no evidence to prove that the driver of the truck saw the plaintiff's intestate, or in the exer-cise of proper care could have seen him until the moment of the collision; it could not have been found that the failure to blow the horn contributed to the accident." *Whalen* v. *Mutrie*, 247 Mass., 316, 142 N. E., 45.

Where a boy ran into the street, "without looking either way." No recovery. *Foster* v. *Rinz*, 202 Mich., 601, 168 N. W., 420; *Havermale* v. *Houck*, 122 Md., 82, 89 Atl., 314.

Or where pedestrian waited in the street for an automobile to pass and then stepped in path of defendant's automobile imme-diately following. Judgment for defendant. *Ward* v. *Fessler* (Mo.), 252 S. W., 667.

Where a boy, stealing a ride on a trolley car, jumped to street in front of a truck moving in direction opposite to trolley: *Held,* error to have submitted case to jury. *Boyer* v. *Grt. A. & P. Tea Co.,* 99 N. J. L., 451, 124 Atl., 778.

Where plaintiff "took no precautions," nonsuit was proper. *Gahagan* v. *Rd.*, 70 N. H., 441, 50 Atl., 146; *Collins* v. *Hustis*, 79 N. H., 446, 111 Atl., 286; *Magee* v. *Cavins* (Tex. Civ. App.), 197 S. W., 1015.

Where young woman steps from position in front of stalled car into the path of on-coming automobile; judgment for defendant affirmed. *Grein* v. *Gordon*, 280 Pa., 576, 124 Atl., 737.

Where boy ran out between two wagons and into collision;

plaintiff negligent; verdict for defendant. *Curley* v. *Baldwin* (R. I. *per curiam*), 9 Atl., 1; *Whalen* v. *Dunbar*, 44 R. I., 136, 115 Atl., 718.

Where no evidence from which inference of due care can be drawn: not entitled to verdict. *Wellman, Adm'r* v. *Wales*, 97 Vt., 245, 122 Atl., 659.

Where a woman "emerged from behind an express wagon into the path of vehicles, without looking for approaching vehicles"; held negligence bars recovery. *Harder* v. *Mathews*, supra.

Failure to make an observation prior to entering zone of danger is negligence. *Mertens* v. *Lake Shore Transfer Co.*, 195 Wis., 646; *Brickell* v. *Trecker*, 176 Wis., 557, 186 N. W., 593.

"If a man starts . . . although he has a right to do so . . . to cross a street without looking for vehicles passing across his path or likely to cross his path as he goes across the street, that man may be found negligent because he has neglected a duty which both the law and common sense casts upon him, namely, to take reasonable precaution to avoid dangers reasonably to be anticipated." *Tiffany & Co.* v. *Drummond*, 168 Fed., 47.

The rules heretofore announced by this court in cases most closely analogous to this as showing the degree of care to be exercised by a pedestrian crossing a main travelled highway in *Rent* v. *Candy Co.*, 122 Me., 25; *O'Malia* v. *Thomas*, 123 Me., 286; *Sturtevant* v. *Ouellette*, 126 Me., 558, were stated clearly and fully in the recent opinion in *Clancey* v. *Cumberland Power & Light Co.*, 128 Me., 274, and they point out that the one who suffered injury in the case at bar failed to exercise the requisite care.

In only one case in this state, *Levesque* v. *Dumont*, 116 Me., 25, do we find a ruling on the act of a plaintiff suddenly emerging from a position of obscurity and presenting himself directly in the path of an approaching automobile, so near it that collision is inevitable. In that case the injured party was a child of nine years and two months. The court held, "that the action of the deceased in heedlessly running in front of the automobile is a bar to recovery."

In the case at bar the injured person was a man of sixty-five years, in the full possession of his faculties.

In the light of all the circumstances, and with the law as expressed herein we can not predicate the jury verdict on sound premises. The pedestrian was negligent, even to the degree of exercising no care for his safety. His negligence continued up to the moment of impact, and, as in *Levesque* v. *Dumont*, recovery is barred.

The only allegations of negligence on the part of defendant on which any testimony appears in the record, are that its automobile was driven at a reckless and unusual rate of speed, and too close to the truck.

Of the latter there is no testimony or evidence except the statement of defendant's driver that he drove by the truck, "within passing distance," and of the former, his testimony that he had been driving "around thirty miles an hour."

In *Whalen* v. *Dunbar*, supra, the Court well said, "If it should be conceded that the defendant's automobile at the time the emergency was created was proceeding at a rate of speed in excess of the statutory limit there was no testimony of probative value showing or tending to show that the accident would not have happened if the defendant's automobile had been proceeding at the rate of twenty-five miles per hour or even at a much less rate of speed, or that the speed of defendant's automobile in any way entered into the cause of the collision. As the speed of defendant's automobile in no wise contributed to the accident the rate of speed is immaterial and liability can not be predicated upon the speed of said automobile."

However, we decide the case wholly upon the utter lack of due care upon the part of the injured man, in the situation evidenced in the record.

The verdict is against the law.

*Motion sustained.*
*New trial granted.*