## CORNELIA DAVIS REED *vs.* UNION STREET RAILWAY COMPANY.

Plymouth. November 6, 1946.— January 31, 1947.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & SPALDING, JJ.

*Negligence*, Motor vehicle, Contributory.

A finding of negligence on the part of the operator of a bus was warranted, and a ruling that a pedestrian walking southerly across a street in the daytime near an intersection was guilty of contributory negligence was not required, by evidence of the circumstances in which the right side of the bus, while it was making a wide right turn from the north to the west into that street from the intersecting street, came into contact with the pedestrian at about the middle of the street.

TORT. Writ in the Fourth District Court of Plymouth dated October 3, 1944.

Upon removal to the Superior Court, the action was tried before *Cabot*, J.

*J. F. Kiernan*, for the plaintiff.

*G. P. Walsh*, for the defendant.

SPALDING, J. After the jury had returned a verdict for the plaintiff, the judge, under leave reserved, entered a verdict for the defendant, subject to the plaintiff's exception, and the correctness of this action is the only question for decision.

The jury could have found these facts: The accident happened on Middle Street, New Bedford, near the intersection of Purchase Street, shortly after noon on a clear day. Middle Street, which is twenty-four feet wide from curb to curb, runs east and west, and intersects Purchase Street at a right angle. Purchase Street runs north and south. The intersection formed by the junction of the two streets was described as "busy." Shortly prior to the accident the plaintiff, a woman seventy-one years of age, was walking south on Purchase Street. When she arrived at the intersection, she turned to the west and proceeded along the north sidewalk of Middle Street for a distance of ten or twelve feet, and then stopped on the edge of the sidewalk. She looked east and west, and, seeing no traffic coming from either direction, started "to walk straight across" to the south side of Middle Street. When she was half way across, the defendant's bus, which was going in a westerly direction, "'slid' . . . between her and the southerly side of Middle Street." She turned to the right to avoid it but "'about the middle of the bus' struck her left shoulder and knocked her to the ground." When the bus came to a stop "the rear tire on the right hand side came to rest on her right foot."

The bus which struck the plaintiff was owned by the defendant and operated by one of its employees; it was slightly over thirty feet long and was eight feet wide. Prior to the accident the bus had been proceeding south on Purchase Street. Upon arriving at the intersection of Purchase and Middle streets, the operator brought the bus to a stop and

remained there until persons going north and south on Purchase Street had passed. He then made a right turn into Middle Street; but in order to clear the curb on the corner at his right he went very much to the south of the center line of Middle Street. When the rear of the bus had cleared the corner, the front end was about a foot from the curbing on the south side of Middle Street. At this point the operator, as a result of a signal[1] from a man on the sidewalk, brought the bus to a stop, and it was then that he learned of the accident. Prior to this he had not seen the plaintiff. At the time he turned into Middle Street he did not notice anybody on the north sidewalk of the street, nor did he look to see if anyone was there. "He was away over on the left hand side of the street and it was difficult for him to see anyone on the right hand side unless one looked particularly for them and he did not look." There was also testimony that, when the bus was on the left or south side of Middle Street in the process of making a turn from Purchase Street, "it was impossible for the operator to determine whether or not a person on the north sidewalk of Middle Street was crossing . . . after the front end of the bus got by them."

The plaintiff had had trouble with her sight for many years. "Her right eye was good but 'she could not see much with her left eye' . . . [and] if 'she covered her right eye she . . . [could not] see.'"

The judge erred in entering a verdict for the defendant.

It could not be said as matter of law that the operator of the bus was not negligent. It could have been found that his failure to observe the plaintiff in time to avoid striking her was attributable to his not looking toward the side of the street from which she was coming. It is true that there was other evidence to the effect that it would be impossible to see one crossing Middle Street after the front end of the bus had passed by him. The jury, however, were not required to believe this and, even if they did, it was open to them to find that the operator ought to have seen the plaintiff before the bus arrived at that position. It is to be noted

---

[1] When this signal was given "the bus . . . was travelling not more than three or four miles an hour."

that the plaintiff was in the middle of the street when she was struck, from which it could have been inferred that she had started to cross at a time when she could have been seen by the operator if he had looked to his right.    The evidence warranted a finding that in the exercise of due care the operator should have seen the plaintiff in time to avoid running her down, and that his failure to do so was causally related to the accident.    *Gray* v. *Batchelder,* 208 Mass. 441.    *Conrad* v. *Mazman,* 287 Mass. 229, 233–234. *Buckman* v. *McCarthy Freight System, ante,* 551.    See *Mulroy* v. *Marinakis,* 271 Mass. 421, 424;  *Joyce* v. *New York, New Haven & Hartford Railroad,* 301 Mass. 361, 364.

It cannot be said that the plaintiff was guilty of contributory negligence as matter of law.    She had a right to expect that the operator would see her and that he would exercise a reasonable degree of care for her safety.    This aspect of the case is governed by the recent case of *Buckman* v. *McCarthy Freight System, ante,* 551.    Nor can it be said that the plaintiff, in view of her defective vision, was necessarily negligent in attempting to cross the street in the manner disclosed by the evidence.    *Neff* v. *Wellesley,* 148 Mass. 487, 495.    See *Keith* v. *Worcester & Blackstone Valley Street Railway,* 196 Mass. 478, 482;  *O'Connor* v. *Hickey,* 260 Mass. 110, 115.

The exceptions are sustained, and judgment is to be entered on the verdict returned by the jury.

*So ordered.*